UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

TIMOTHY M. COHANE,

04  CV  0181 ⊂/s⊂

              Plaintiff,                              Civ. No.

        v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, by and through its
President, Myles Brand,

TOM HOSTY, as an NCAA Enforcement
Director and an employee of the NCAA,

**COMPLAINT AND JURY DEMAND**

STEPHANIE HANNA, as an NCAA
Enforcement Director and an employee
of the NCAA,

JACK FRIEDENTHAL, as an employee
of the NCAA, and former Chairman of the
NCAA Committee on Infractions,

              Defendants.

-----------------------------------------------------------X

1.      Plaintiff, Timothy M. Cohane, by his attorneys, O'Leary & O'Leary, for his

Complaint against the defendant above-named, alleges as follows:

## JURISDICTION AND VENUE

2.      This is a civil action brought for injunctive relief and for money damages to

redress the injuries the defendants have caused to plaintiff by the deprivation under color of state

law of the right to due process secured to plaintiff.

        (a)    The claims contained in this action arise under the provisions of the
               Fourteenth Amendment of the United States Constitution; and

        (b)    The Civil Rights Act of 1871, codified as 42 U.S.C. §§1983.

3.     Jurisdiction over the federal claims is conferred on this Court pursuant to 28 U.S.

C. §§ 1331 and 1343; supplemental jurisdiction over the related state laws claims is attained

pursuant to 28 U.S.C. § 1367(1).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

A.     The Plaintiff

5.     Plaintiff, Timothy M. Cohane, ("Cohane"), served as head coach of the men's

intercollegiate NCAA Division I basketball team at The State University of New York at Buffalo

("SUNY Buffalo") from 1993 through December 3, 1999. During this time Mr. Cohane's

employment was pursuant to written contract, he was a member of the faculty staff and terms of

his employment were covered under a collective bargaining agreement existing between the State

of New York and the Public Employees Union.

B.     The Defendants

6.     The defendant, National Collegiate Athletic Association ("NCAA") is an

unincorporated association. Further, the NCAA markets, rules, governs, controls, operates and

licenses the multi billion dollar college sports industry and is sued herein by and through its

president, Myles Brand ("Brand").

7.     At all times mentioned herein, the defendant, NCAA is an unincorporated

association which is involved in interstate commerce including the transaction and engagement

of business and commerce in the State of New York.

8.     At all times herein mentioned, the defendant NCAA by association, contract,

agreement, and action through its agents, servants and or employees did and still does jointly

2

engage in, control and operate all aspects of intercollegiate sports programs and athletic departments operating at a New York State funded institution known as State University of New York at Buffalo ("SUNY Buffalo") including the men's basketball team.

9.     At all times relative to this complaint as alleged below in Count I, the defendant NCAA acted as an agent of the State of New York and by reason of the NCAA's willful participation and joint action actions as taken with state officials is sued herein in its capacity as a state actor, acting under color of state law.

10.     Upon information and belief the defendants, Tom Hosty ("Hosty") and Stephanie Hanna ("Hanna") are employees of the NCAA and acted in a capacity as director of the NCAA enforcement staff.

11.     Upon information and belief, defendant Jack Friedenthal ("Friedenthal") was an agent/servant and/or is an employee and member of the NCAA and acted in a capacity as Chairman of the Committee on Infractions on behalf of the NCAA.

12.     At all times herein mentioned, the defendant NCAA had an agreement with the State of New York pursuant to which the NCAA which transacts business within the State of New York and engages in business with the State of New York.

13.     At all times hereinafter mentioned, defendant NCAA and SUNY Buffalo jointly engaged in the regulation and management of the men's basketball program at SUNY Buffalo; further SUNY Buffalo delegated significant controlling authority over its basketball program to defendant NCAA.

3

14.    Relief is sought against each and all defendants. The defendant NCAA is also sued herein by reason of tortious and wrongful actions committed in the State of New York by its agents servants and or employees.

15.    This action is brought against the separate defendants, NCAA, HOSTY, HANNA and the NCAA both jointly and severally, and in their official and individual capacities.

16.    The named defendants herein at all times relative to the complaint acted under the authority and laws of the State of New York. By reason of defendants' actions as set forth in Count I below, plaintiff has been deprived of rights protected by the United States Constitution and federal statutory law, as well as rights protected by common law. All references to "defendants" hereinafter shall mean all named defendants individually and in their official capacity.

## BACKGROUND

17.    Mr. Cohane was a student-athlete at the U.S. Naval Academy where he played varsity basketball. He graduated from the Naval Academy in 1967 and then was commissioned as an ensign in the Navy.

18.    In 1968, Mr. Cohane volunteered for an assignment to command river boats during the Vietnam War. He fought in Vietnam during 1968 and 1969.

19.    Plaintiff Cohane then returned home to the United States as a decorated war veteran. He received a Purple Heart and two Bronze Star Medals from the President of the United States. Upon returning from war, Mr. Cohane was assigned to the United States Naval Base in Newport, Rhode Island. For two years he coached the basketball team at the base.

4

20.     Mr. Cohane left the Navy in 1971 to accept a job at Iona Prep in New York.

There, Mr. Cohane taught history and coached basketball for four years on the secondary school level.

21.     In 1974, he began his career as a college basketball coach at Manhattanville College.

22.     After five years at Manhattanville, Mr. Cohane left to accept the head men's basketball coaching position at Dartmouth College.

23.     After coaching at Dartmouth for a period of four years, Mr. Cohane pursued a career on Wall Street. Mr. Cohane was successful in business, but missed coaching student-athletes. Therefore, in 1988, he accepted a position as the unsalaried head coach at the United States Merchant Marine Academy.

24.     From 1990-1991, Mr. Cohane worked as a voluntary assistant men's basketball coach at the United States Military Academy. After one season at West Point, Mr. Cohane left the Academy to take a similar position at Boston College, where he coached from 1991-1993.

## FACTS

25.     In 1993, SUNY Buffalo hired Mr. Cohane as its head men's basketball coach. During the first five seasons that Mr. Cohane coached, Nelson E. Townsend was the Director of Athletics at SUNY Buffalo. In the first five seasons under coach Cohane, the SUNY Buffalo men's basketball program progressed from an NCAA team without a league to the East Coast Conference, the Mid American Conference and finally the MAC. In short, Coach Cohane's performance was extraordinary.

5

26.     On January 29, 1999 SUNY Buffalo approved plaintiff's contract extension

effective through April 13, 2002.

27.     On August 9,1999 Rob Fournier ("Fournier"), a Mid American Conference

employee, authored and signed a letter addressed to the NCAA wherein Fournier confirmed a

phone call he made to the NCAA on August 3, 1999 concerning an alleged infraction.  Fournier

in the August 9, 1999 letter referred to "documentation offered by the school".  Further, the

August 9, 1999 Fournier letter  stated as follows:

> "As a consequence of the sensitive personal and private issues to
> be protected, the Conference will undertake this process in the
> coming weeks by submitting affidavits, interviewing affected
> parties, and insuring due process .... Toward that end, we will
> utilize when necessary the full services and cooperation of
> personnel at the University at Buffalo including New York State
> legal counsel."

28.     Upon information and belief, on December 3, 1999, a meeting was held during

which plaintiff was told by SUNY Buffalo counsel that the NCAA advised SUNY that it was

assumed plaintiff was guilty of major NCAA rule violations and plaintiff and his staff should be

forced to resign.  On December 3, 1999, plaintiff was forced to resign.

29.     On December 7, 1999, plaintiff receive a notification which that "Mid American

Conference has adopted both conference procedures and in absence of specific stipulations those

of NCAA Articles By-law 32".

30.     On December 22, 1999 Fournier, representing the MAC and the NCAA, wrote to

school officials that "although characterized as a resignation (of Cohane) it has the effect of the

change of leadership... and are all detailed as an institutional response to this investigation".

6

31.     Between January 16, 2000 and January 18, 2000, the MAC Committee on

Infractions held a hearing. Representatives of the MAC schools judged and reported on the

MAC investigation and report of Fournier. Also present and participating presentation in the

case against Cohane were SUNY Buffalo school officials and representatives of the NCAA.

32.     At the hearing plaintiff's right to due process was violated by reason of the

willful, arbitrary and capricious actions of the defendants.

33.     At the hearing the plaintiff's rights to due process was violated by willful arbitrary

and capricious actions including the suborning of perjury.

34.     Between January 18, 2000 and October 14, 2001 the defendant NCAA arbitrarily

and capriciously violated and disregarded their own rules, regulations, by-laws and procedures,

including but not limited to Article 32 of NCAA By-laws as set forth and pertaining to:

> Conformance with procedures; Conflict of Interest; Status
> Notification, Public Announcements;
>
> Confidentiality; Representation by Legal Counsel; Proper
> Identification by Staff Member; Disclosure of Purpose of
> Interview; Basic Information Gathering; Timely Process;
> Recording of Interview Proceedings; Verification and Access to
> Records; Corroboration or Refutation of Information; Disclosure of
> Information; Notification of Others in Potential Jeopardy
> Obligation to Provide Full Information.

35.     In the Spring of 2000, after the basketball season completed and after some

student-athletes had exhausted their NCAA eligibility, the NCAA enforcement staff requested

interviews with student-athletes regarding plaintiff. Student-athletes told State officials at SUNY

Buffalo that they would not interview with the NCAA enforcement staff. In response, school

officials under the control of the NCAA and aiding NCAA misled and improperly advised

7

student-athletes that if they did not comply with the NCAA request for an interview the issuance of their degrees could be at risk.

36.    On January 29, 2001 defendant employees Hosty and Hanna, issued a case summary to be used by the NCAA Committee of Infractions in a hearing to be held on February 9, 2001. In the preparation of the case study the defendant used and relied upon information provided by SUNY Buffalo officials including affidavits the defendants knew were coerced, false and otherwise tainted. Furthermore, in numerous instances Hosty and Hanna willfully and recklessly changed testimony in order to implicate plaintiff in alleged rules violations at SUNY Buffalo.

37.    That on February 9, 2001, Cohane appeared before the NCAA for a so-called hearing. During the hearing, defendant NCAA and its employees defendants Hosty, Hanna and Friedenthal actively and jointly participated with SUNY Buffalo officials and MAC officials to violate and obstruct plaintiff's rights of due process. The defendants acting together with state university officials knowingly and carelessly permitted tainted and false sworn affidavits to be presented and used as evidence against Cohane.

38.    That defendant NCAA and its employee Friedenthal, carrying a badge of authority bestowed by the State of University at Buffalo, publically and voluntarily stated and declared in a written report/press/internet/ release titled **"University at Buffalo, The State University of New York Public Infractions Report"** dated March 21, 2001 that plaintiff acted "contrary to the principles of ethical conduct". The NCAA report further declared that plaintiff was "evasive, deceptive and not credible". In addition, sanctions were imposed to keep plaintiff from being

8

able to coach in any NCAA school which includes schools in the New York State's Public
University System.

39.   In an unprecedented act of maliciousness, and in retaliation against Mr. Cohane's
attempts to defend himself and establish his innocence, the NCAA in the March 21, 2001 report
also found plaintiff guilty of major violations.  In over 300 cases before and since involving the
same by law before or since the NCAA uniformly ruled them to be minor violations.

40.   In a further act of retaliation the NCAA charged Mr. Cohane with violating
By-law 10.1, Ethical Conduct without cause.

41.   On March 21, 2001 following the release of the NCAA report, a joint press
conference was held before the media by the NCAA and SUNY Buffalo in which State
University officials publically declared that "UB accepts the report and its findings in its
entirety".  Plaintiff requested, but was denied, participation in the joint press conference.

42.   That the untrue and false stigmatizing charges made by the defendants are for all
time part of the plaintiff's personnel file maintained by the State University of New York at
Buffalo and NCAA files including the NCAA website. The NCAA mandated that plaintiff was
guilty of "violating principles of ethical conduct" and that plaintiff was "evasive, deceptive and
not credible".  This NCAA declaration and its ratification by SUNY Buffalo officials has been
and continues to be disclosed by the defendants and State University officials to all prospective
future employers of plaintiff during plaintiff's attempts to seek future employment as a head
coach in college basketball.

43.   On August 20, 2001 the NCAA Appeals Committee reviewed the finding of the
March 21, 2001 report.

9

44.     On October 12, 2001 the NCAA Appeals Committee reprimanded the Committee

on Infractions and stated that "many aspects of the case were troublesome". The Committee on

Infractions was reprimanded for:  not interviewing key witnesses; inconsistent investigation;

using certain troublesome language involving the ethical conduct violation; the rationale for the

ethical conduct finding. The Appeals Committee stated: "it is important to state clearly that a

persons assertion of innocence however vigorous against charges of violations should not

ordinarily be the subject of an unethical conduct finding".

45.     The NCAA  on October 12, 2001 admitted in writing that a finding of a violation

of ethical conduct constitutes a "stain on the reputation and career" of the alleged violator.

46.     Despite the NCAA admission that the ethical conduct charge was made in error

and amounts to a scarlet letter, neither the NCAA or SUNY Buffalo took any action to remove

this finding from the plaintiff's employment and/or NCAA record.

## CLAIMS

### Count I

47.     Plaintiff incorporates by reference paragraphs "1" through "46" of this Complaint

as if herein set forth at length.

48.     That from August 1999  up to and including October 2001 the defendants, Hosty ,

Hanna and the NCAA acted under color of state law and were jointly engaged with State officials

employed at SUNY Buffalo, including former athletic director Robert Arkeilpane, interim

athletic director Bill Maher, Dennis Black, Vice president for Student Affairs and former

University President, William R. Greiner, all of  whom willfully and jointly participated to and

did engage in a wrongful pattern of wrongful conduct and actions which violated plaintiff's rights

10

as guaranteed by the Fourteenth Amendment to the United States Constitution and in violation of
plaintiff's civil rights as provided by 42 U.S.C. § 1983.

    49.    At all times herein, the NCAA sufficiently involved with SUNY Buffalo that
NCAA conduct constituted state action. SUNY Buffalo: created the legal framework governing
the conduct; delegated its state authority to the NCAA and knowingly accepted the benefits
derived from the NCAA's unconstitutional behavior.

    50.    At all times the NCAA and SUNY Buffalo worked in close nexus to accomplish
the wrongful actions complained of herein. The NCAA acted together with and obtained
significant aid from state officials. The NCAA was a willful participant in state activity and
worked in concert with SUNY Buffalo. The school officials authorized and the NCAA and were
united against plaintiff.

    51.    That the defendants by their conduct, statements and actions, deprived plaintiff of
the liberty interest of his reputation without due process law as provided in the Fourteenth
Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983.

    52.    The defendants through March 21, 2001 and continuing, voluntarily, publicly and
falsely accuse plaintiff of misconduct and stigmatized him by declaring plaintiff guilty of
"violating principles of ethical conduct" and other serious charges in the course of his
employment at the SUNY Buffalo in violation of plaintiff's civil rights as guaranteed by the
Fourteenth Amendments to the United States Constitution and in violation of plaintiff's civil
rights as provided by 42 U.S.C. § 1983.

    53.    That the defendants herein by their wrongful conduct, statements, actions and
omissions deprived the plaintiff of his property interest as a state employee without due process.

11

54.     That the defendants by their wrongful conduct and statements struck to the very heart of plaintiff's professional competence and drastically impaired plaintiff's chance of ever receiving a head coaching position. The defendants have impugned plaintiff's reputation in such fashion as to effectively put a roadblock in the plaintiff's continued ability to practice his profession and deprived plaintiff of the freedom to continue employment in the coaching field.

55.     That as a result of the actions of the defendants herein. plaintiff has suffered economic loss, damage to reputation and emotional distress.

56.     That the actions of the defendants were undertaken wilfully, intentionally and maliciously, or with reckless disregard for the rights of the plaintiff thereby entitling plaintiff to punitive damages.

## Count II

(Tortious interference with contractual relations against defendants MAC and Fournier)

57.     Plaintiff incorporates by reference paragraphs 1 though 46 as set forth herein.

58.     That a valid written contract of employment existed between the SUNY Buffalo and the plaintiff Cohane.

59.     That said contract provided that Coach Cohane was deemed a state employee contracted to coach the men's basketball team at SUNY Buffalo through April 13, 2002.

60.     That the terms of the plaintiff's employment contract was covered by the collective bargaining agreement between the State of New York and the Public Employees Union.

12

61.    The State University of New York adopted NCAA regulations and incorporated the regulations into the plaintiff's employment contract thereby creating a State adopted policy and guidelines which included NCAA regulations.

62.    That upon information and belief, the defendant NCAA had actual knowledge of the written employment contract including terms and addendums thereto which existed between plaintiff and the State University of New York.

63.    That by reason of the defendants actions as alleged in the complaint herein defendant procured a breach of plaintiff's employment contract to be caused by the State University of New York.

64.    That December 3, 1999 plaintiff entered into a second written contract with SUNY Buffalo. The terms of the contract included a release for actions by the plaintiff which may have allegedly occurred on or prior to December 3, 1999.

65.    That the defendant NCAA had actual knowledge of said contract dated December 3, 1999 including the terms and conditions thereof.

66.    That the State University of New York on December 4, 1999 through March 21, 2001 and continuing has materially breached the December 3, 1999 contract by engaging in continuous pattern of wrongful, improper and egregious conduct and statements as alleged and which constituted a breach of the December 3, 1999 contract.

67.    That the defendant NCAA jointly and severally by its conduct and actions as alleged in the Complaint herein procured and did cause the State of New York to breach the aforesaid December 3, 1999 contract between plaintiff and the State University of New York.

13

68.     As a result of defendant NCAA's actions, the State University of New York at

Buffalo engaged in a continuous and wrongful pattern of conduct from December 4, 1999

through March 21, 2001 and continuing .  During this time period the State University of New

York, through its employees agents and officials, publicly claimed and alleged through false and

misleading statements and documents that were submitted by the State University of New York

at Buffalo that plaintiff had engaged in conduct that violated NCAA regulations by actions which

occurred prior to December 3, 1999.  This conduct constitutes a breach of the contract between

SUNY Buffalo and the plaintiff.

69.     That as a result of the defendant NCAA's tortious interference with the

contractual relationship between plaintiff and the State University of New York at Buffalo, the

plaintiff was caused to suffer economic damages, loss of income, and emotional distress.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully demands judgment against defendants:

(1)     Declaring that plaintiff is entitled to name clearing hearing to seek removal of the

false charges and a declaration that the defendants violated plaintiff's rights to due

process;

(2)     Granting plaintiff compensatory and punitive damages against defendants NCAA,

arising from defendants aforesaid unlawful actions, as alleged in Count I, together

with lawful pre-judgment interest thereon in the amount of $15,000,000.00;

(3)     Awarding plaintiff compensatory and punitive damages and as against defendant

NCAA, arising from their tortious actions as alleged in Count II in the amount of

$10,000,000.00;

14

(4)     Awarding plaintiff his reasonable attorneys fees pursuant to 42 U.S.C. § 1988;

(5)     Awarding plaintiff the costs and disbursements of this action; and

(6)     Awarding plaintiff such other and further relief as the Court seems just and

proper.

## JURY DEMAND

The plaintiff hereby demands, under Rule 38(b) of the Federal Rules of Civil

Procedure, a trial by jury of all issues triable of right by a jury.

Dated: Garden City, NY
      March 18, 2004

                                    Sean O'Leary (SOL-0040)
                                    Attorney for Plaintiff
                                    O'Leary & O'Leary
                                    350 Old Country Road, Suite 105
                                    Garden City, New York 11530

To:   NCAA
       700 W. Washington Street
       Indianapolis, Indiana  46206

       Tom Hosty
       700 W. Washington Street
       Indianapolis, Indiana  46206

       Stephanie Hanna
       700 W. Washington Street
       Indianapolis, Indiana  46206

       Jack Friedenthal
       700 W. Washington Street
       Indianapolis, Indiana  46206